**BACKES & HILL LLP**
Seth J. Lapidow, Esq.
3131 Princeton Pike
Building 5, Suite 114
Lawrenceville, NJ 08648
Telephone: (609) 396-8257
lapidow@backesandhill.com
*Attorneys for defendant Earthwhile Endeavors, Inc.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                           :
Ricardo Jurado, individually on            :     Civil Action No.: 2:18-cv-05619
behalf of himself and all others           :
similarly situated,                        :          *Filed Electronically*
                Plaintiff,   :
                                           :
      -against-                     :
                                           :
EARTHWHILE ENDEAVORS, INC.,                :
incorrectly sued as Earthbath, Inc.        :
                                           :
            Defendant.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

## DEFENDANT EARTHWHILE ENDEAVORS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR STAY PLAINTIFF'S COMPLAINT

---

**BACKES & HILL LLP**
200 Park Avenue
Suite 1700
New York, New York 10166

# TABLE OF CONTENTS

INTRODUCTION     1

PRELIMINARY STATEMENT     1

STATEMENT OF FACTS     2

LEGAL ARGUMENT     3

I.     THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION     3

    A. PLAINTIFF CANNOT PURSUE A CLAIM BASED ON PRODUCTS HE DID NOT BUY     4

    B. PLAINTIFF LACKS STANDING TO SUE FOR INJUNCTIVE RELIEF     5

    C. PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF ARE MOOT     8

II.     THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLAUSIBLY ALLEGE THE PRESENCE OF NON-NATURAL INGREDIENTS     9

III.     THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER N.Y. GEN. BUS. LAW     11

    A. PLAINTIFF FAILS TO STATE A CLAIM BECAUSE THE REASONABLE CONSUMER WOULD NOT HAVE BEEN MISLED     14

IV.     PLAINTIFF'S BREACH OF WARRANTY CLAIMS SHOULD BE DISMISSED     17

V.     PLAINTIFF'S CLAIM FOR VIOLATION OF STATE CONSUMER PROTECTION STATUTES SHOULD BE DISMISSED FOR FAILURE TO PLEAD WITH THE REQUSITE PARTICULARITY     18

VI.     THE COMPLAINT SHOULD BE DISMISSED OR STAYED UNDER THE PRIMARY JURISDICTION DOCTRINE     21

CONCLUSION     25

**Cases**

*In re Aggrenox Antitrust Litig.*,
    94 F. Supp. 3d 224 (D. Conn. 2015)....................................................................21

*Albert v. Blue Diamond Growers*,
    151 F. Supp. 3d 412 (S.D.N.Y. 2015)..................................................................7

*In re Aqua Dots Products Liability Litig.*,
    654 F.3d 748 (7th Cir. 2011) .................................................................................8

*Aracena v. BMW of N. Am., LLC*,
    71 N.Y.S.3d 614 (2d Dep't. 2018).......................................................................18

*Ascroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937 (2009)..........................................................9, 10, 11

*Atik v. Welch Foods, Inc.*,
    No. 15-CV-5405, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016.) .......................6, 7

*Ault v. JM Smucker Co.*,
    2014 WL 1998235 (S.D.N.Y. May 15, 2014) ....................................................21

*Avola v. La.-Pac. Corp.*,
    991 F. Supp. 2d 381 (E.D.N.Y. 2013) .................................................................15

*Belfiore v. Procter & Gamble Co.*,
    311 F.R.D. 26 (E.D.N.Y. 2015).......................................................14, 21, 23, 24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007)..............................................................9, 11

*Bellevue S. Assoc. v HRH Const. Corp.*,
    78 NY2d 282 (1991) ...........................................................................................18

*Bernadino v. Barnes & Noble Booksellers, Inc.*,
    No. 17-CV-04570, 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017)........................6

*Braynina v. TJX Companies, Inc.*,
    15 CIV. 5897 (KPF), 2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016)................12,13

*Buonasera v. The Honest Company, Inc.*,
    208 F. Supp. 3d 555 (S.D.N.Y. 2016)...................................................................6

*Carter v. Healthport Technologies*,
822 F.3d 47 (2d. Cir. 2016)......................................................................3

*Carver v. City of New York*,
621 F.3d 221 (2d Cir. 2010)......................................................................6

*City of Los Angeles v. Lyons*,
103 S. Ct. 1660, 461 U.S. 95 (1983) ......................................................11

*In re ConAgra Foods Inc.*,
908 F. Supp. 2d 1090 (C.D. Cal. 2012) ..................................................17

*Daniel v Mondelez Intl., Inc.*,
287 F. Supp. 3d 177 (E.D.N.Y. 2018) ....................................................19

*Davis v. Hain Celestial Grp., Inc.*,
297 F. Supp. 3d 327 (E.D.N.Y. 2018) .....................................................6

*Delgado v. Ocwen Loan Servicing, LLC*,
2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) .......................................14

*DiMuro v. Clinque Laboratories*,
LLC, 572 Fed. Appx. 27 (2d Cir. 2014) ..................................................4

*DiMuro v. Estee Lauder Companies, Inc.*,
No. 3:12-CV-01789, 2013 WL 12080901 *(*D. Conn. *November 19, 2013)*,
*aff'd DiMuro v. Clinque Laboratories, LLC*, 572 Fed. Appx. 27 (2d Cir. 2014) ...................19

*E.I. DuPont de Nemours & Co. v. Invista B.V.*,
473 F.3d 44 (2d Cir. 2006)........................................................................4

*Elkind v Revlon Consumer Prods. Co*rp.,
No. 14-CV-2482, 2015 WL 2344134 (E.D.N.Y. May 14, 2015) ......................15, 7

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013), (S.D.N.Y. 2011) .......................................14

*Fink v. Time Warner Cable*,
810 F.Supp.2d 633 (S.D.N.Y. 2011).......................................................15

*In re Frito-Lay North Am. Inc. All Natural Litig.*,
No. 12-MD-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)..................4,13, 17

*Garcia v Chrysler Group LLC*,
127 F. Supp. 3d 212 (S.D.N.Y. 2015).....................................................19

*Genesco Entm't v. Koch*,
593 F. Supp. 743 (S.D.N.Y. 1984) ..........................................................13

*Goldemberg v Johnson & Johnson Consumer Companies, Inc.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................................19

*Goya Foods Inc. v. Tropicana Products Inc.*,
    846 F.2d 848 (2d Cir. 1988)...............................................................21, 22

*Hart v. BHH, LLC*,
    No. 15 Civ. 4804, 2016 WL 2642228 (S.D.N.Y, May 5, 2016)...................4, 10

*Hemy v. Perdue Farms, Inc.*,
    Civil Action No. 11–888 (FLW), 2011 WL 6002463 (D.N.J. Nov. 30, 2011)......................20

*Holve v. McCormick & Company, Inc.*,
    334 F. Supp. 3d 535 (W.D.N.Y. 2018) ...........................................5, 6, 8

*In Metropolitan Retail Assn. v. City of New York*,
    60 Misc.2d 805, 303 N.Y.S.2d 612 (Sup.Ct., N.Y.Co., 1969) ................................12

*Jovel v. Boiron, Inc.*
    No. 11-cv-10803, 2014 WL 1027874 (C.D. Cal. Feb. 27, 2014) .............................8

*Kane v. Chobani, Inc.*,
    2013 WL 5289253 (N.D.Cal. Sept. 19, 2013) ........................................16

*In re KIND LLC "Healthy & All Natural" Litig.*,
    209 F. Supp. 3d 689 (S.D.N.Y. 2016).................................................11

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*,
    865 F. Supp. 2d 529 (D.N.J. 2011) .............................................19, 20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...........................................................4, 5

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012)......................................................4

*Merck Eprova AG v. Brookstone Pharm., Inc.*,
    920 F.Supp.2d 404 (S.D.N.Y. 2013)..............................................12

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)......................................................4

*O'Neill v. Standard Homeopathic Company*,
    No. 16-CV-8687 (KMK) 2018 WL 4680997 (S.D.N.Y. Sept. 28, 2018) .............................14

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) ..........................................................14

*Pelayo v. Nestle USA, Inc.*,
　989 F. Supp. 2d 973 (C.D. Cal. 2013) .................................................................16

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
　712 F.3d 705 (2d Cir. 2013).................................................................................9

*Petrosino v. Stearn's Products, Inc.*,
　16-CV-7735 (NSR), 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ......................17

*Pungitore v. Barbera*,
　506 F. App'x 40 (2d Cir. 2012) ............................................................................6

*Red v. Kraft Foods, Inc.*,
　No. 10-CV-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)...........................16

*Reid v. GMC Skin Care USA Inc.*,
　2016 WL 403497 (N.D.N.Y., Jan. 15, 2016)..........................................................6

*Rodi v. S. New England Sch. of Law*,
　389 F.3d 5 (1st Cir.2004)....................................................................................20

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices and Products Liab. Litig.*,
　288 F. Supp. 3d 1087 (D.N.M. 2017) .................................................................20

*Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*,
　No. 16-CV-03638, 2017 WL 627461 (S.D.N.Y. Feb. 15, 2017)...........................12

*Schiller v. Tower Semiconductor Ltd.*,
　449 F.3d 286 (2d Cir. 2006).................................................................................22

*Scholder v. Riviana Foods Inc.*,
　16-CV-6002, 2017 WL 2773586 (E.D.N.Y. June 23, 2017)....................13, 23, 24

*In re Scotts EZ Seed Litig.*,
　No. 12-CV-4727, 2013 WL 2303727 (S.D.N.Y. May 22, 2013) .....................15, 17

*Shain v. Ellison*,
　356 F.3d 211 (2d. Cir. 2004)................................................................................51

*Spagnola v. Chubb Corp.*,
　574 F.3d 64 (2d Cir. 2009)....................................................................................14

*Spiro v. Healthport Techs., LLC*,
　73 F.Supp.3d 259 – 72 (S.D.N.Y 2014) ................................................................6

*People ex rel. Spitzer v. Applied Card Sys., Inc.*,
    11 N.Y.3d 105 (2008) ........................................................................12

*Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*,
    No. 96 Civ. 5150 (JFK), 1997 WL 137443 (S.D.N.Y. Mar. 24, 1997) ...................13

*State by Lefkowitz v. Colo. State Christian Coll. of Church of Inner Power, Inc.*,
    346 N.Y.S.2d 482 (N.Y. Sup. Ct. 1973) ................................................12

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
    646 F. Supp. 2d 510 (S.D.N.Y. 2009) ....................................................15

*Tomasino v. Estee Lauder Companies Inc.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) .......................................................18

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,
    309 F. Supp. 2d 401 (E.D.N.Y. 2004) ....................................................15

*Zaccagnino v Nissan N. Am., Inc.*,
    14 CIV. 3690 LLS, 2015 WL 3929620 (S.D.N.Y., June 17, 2015) .......................15

**Statutes**

15 U.S.C. 2301(6)(A).............................................................................17

Federal Trade Commission Act, 15 U.S.C. § 41 et seq. ..........................................5,22

N.Y. Gen. Bus. Law §§349 and 350 ...............................................................11,12

New Jersey Consumer Fraud Act ..................................................................19, 21

7 U.S.C. §6502(21) ..............................................................................11

21 C.F.R. §178.3400.............................................................................14, 15

21 C.F.R. §172.515 .............................................................................14

40 C.F.R. §180.910 .............................................................................14

7 C.F.R. §205.605(b) ...........................................................................15

F.R.C.P. 9(b) ..................................................................................19

F.R.C.P. 12(b)(1) ..............................................................................9

**Other Authorities**

*NOP 5033-1 Decision Tree for Classification Syn/NS* ...............................................................16

https://whatsinproducts.com/files/brands_pdf/1391295214 ........................................................15

https://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinfor
mation/labelingnutrition/ucm456090.htm ...............................................................................14

*https://www.ftc.gov/news-events/blogs/buisness-blog/2016/04/are-your-natural-
claims-all-accurate* ........................................................................................................13, 23

https://www.ftc.gov/system/files/documents/cases/1607ltrstocommenters.pdf .....................13, 16

United States Constitution Article III ...........................................................................................3, 10

# INTRODUCTION

Defendant Earthwhile Endeavors, Inc., incorrectly sued as Earthbath, Inc. ("Earthwhile") respectfully submits this memorandum of law in support of its motion to dismiss or stay plaintiff Ricardo Jurado's ("Plaintiff") Complaint in this matter pursuant to Fed. R. Civ. P. 9 and 12.

# PRELIMINARY STATEMENT

Plaintiff alleges that Earthwhile's labeling of 25 of its pet care products (the "Products") is deceptive because the Products allegedly claim to be "Totally Natural" and "All Natural" when, in Plaintiff's view, the Products contain materials that are synthetic. But, as a matter of law, Earthwhile has made no deceptive claims. *First*, the individual Products do not claim to be "Totally Natural" or "All Natural" and, as the Complaint shows, all but one of the Products' labels merely have the – now discontinued -- slogan "totally natural pet care" featured under the Earthbath name. Indeed, Plaintiff's claims are moot as the current Earthwhile labels no longer say even that and Earthwhile's unconditional, money back guarantee is able to provide complete relief to Plaintiff. And, *second*, the Complaint fails to adequately plead that the materials in the Products alleged to be synthetic compounds, like vitamin C and common table salt, are not natural. Thus, Plaintiff's myriad claims fail for the following separate and independent reasons.

*First*, Plaintiff's complaint fails to meet the well settled pleading standards under *Iqbal/Twombly* because the only allegations of the presence of synthetic ingredients are conclusory and speculative. *Second*, Plaintiff lacks standing because he seeks injunctive relief without the necessary allegations of the risk of continuing harm from purchasing the Products in the future, seeks damages for products which he did not purchase, and Plaintiff's claims are moot. *Third*, as a matter of law, a reasonable consumer would not have been misled when purchasing the Product. *Fourth*, the slogan "totally natural pet care," taken in context, is non-

actionable puffery. *Fifth*, Plaintiff fails to plead violation of the consumer fraud statues of 42 states with the requisite particularity. *Sixth*, Plaintiff's breach of express warranty claim fails for lack of pre-suit notice. *Seventh*, the Magnuson-Moss Warranty Act claim fails because the labels do not promise any particular result over any specific period of time. *Eighth*, Plaintiff's claim of breach of the implied warranty of fitness for a particular purpose fatally fails to allege privity or pre-suit notice. *Last*, Plaintiff's claims should be dismissed or stayed under the primary jurisdiction of the Federal Trade Commission ("FTC").

## STATEMENT OF FACTS

Plaintiff alleges that he purchased the "a number of products, including the grooming wipes from online and retail stores such as Petco." (Complaint Dkt. No. 1, ("Compl.") at ¶31). Plaintiff further alleges that the packaging of Earthwhile's product line of all 25 pet care products contains the representation that they were "Totally Natural" and/or "All Natural." (*Id.* at ¶¶ 31 and 62).[1] Plaintiff does not allege which of the various grooming wipes among the various grooming wipes included in the Products he actually purchased or which labels induced him to purchase. Tellingly, Plaintiff does not allege that the Products failed to provide relief to the various specific conditions and purposes to which they are addressed, that the Products did not contain the ingredients claimed to be present, or that the Products caused any irritation to his pets. Plaintiff alleges that he would purchase the Products again "if the ingredients were changed. . .." Compl. at ¶46.

Plaintiff alleges that Polysorbate 20, Citric Acid (Vitamin C), Glycerin, Cetearyl Alcohol, Panthenol (Vitamin B-5), Lauryl Glucoside, Tocopheryl Acetate (Vitamin E), Phenoxyethanol, and Sodium Chloride (salt) are contained in the Products and are not natural. (Complaint at ¶¶6,

---

[1] Despite alleging that he only purchased "grooming wipes" (without alleging which ones), Plaintiff pursues claims as against 24 (twenty four) additional Earthwhile products (collectively the "Other Products") (Complaint at ¶1).

7). But it is well-known that all these alleged ingredients can either be found in nature or are derived from natural materials and are "nature identical."[2] Sodium Chloride is, of course, table salt.[3] Polysorbate 20 is made from sorbitol derived from corn, coconut oil, or other fruits.[4] Tocopheryl Acetate is a form of Vitamin E that is isolated from vegetable oils.[5] Cetaryl Acetate is a fatty acid found in coconut oil.[6] Lauryl Glucoside is a sugar-based surfactant.[7] Phenoxyethanol is found in green tea.[8] Citric Acid is vitamin C and is found in fruit and produced by a natural process involving mold.[9] Glycerin is found in shea butter and coconut oil.[10]

## LEGAL ARGUMENT

**I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO F.R.C.P. 12(b)(1)**

At the threshold, the Court must consider whether the plaintiff has standing to pursue this action. *See Carter v. Healthport Technologies*, 822 F.3d 47 (2d. Cir. 2016) (*citing Davis v. Federal Election Commission*, 554 U.S. 724, 732-33, 128 S.Ct. 2759 (2008)). Under Article III of the United States Constitution, "the federal judicial power extends only to actual cases and controversies." *E.I. DuPont de Nemours & Co. v. Invista B.V.,* 473 F.3d 44, 46 (2d Cir. 2006). The "constitutional minimum" requires three elements: (1) injury-in-fact, (2) causation and (3) redressibility. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). "The party invoking

---

[2] *See,* http://www.fao.org/tempref/codex/Meetings/CCFAC/ccfac37/FA37_15e.pdf. Under Federal Rule of Evidence 201, a court make take judicial notice of "a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b) (2).
[3] https://en.wikipedia.org/wiki/Sodium_chloride
[4] https://www.naturesaid.ca/ingredient/polysorbate-20/
[5] https://www.truthinaging.com/ingredients/tocopheryl-acetate
[6] https://ingredients.puracy.com/ingredient/cetearyl-alcohol
[7] phique.com/surfactants-lauryl-glucoside/
[8] https://blog.honest.com/what-is-phenoxyethanol/
[9] https://www.thespruceeats.com/what-is-citric-acid-1328465
[10] https://www.ewg.org/skindeep/ingredient/702620/GLYCERIN/

federal jurisdiction bears the burden of establishing these elements" and each element must be supported … with the manner and degree of evidence required at successive stages of the litigation." *Id*. at 561.[11] In a class action lawsuit, the named plaintiff must himself have standing to sue; "it is not sufficient to show that 'an injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Hart v. BHH, LLC*, No. 15 Civ. 4804, 2016 WL 2642228 (S.D.N.Y, May 5, 2016) (*quoting Lewis v. Casey*, 518 U.S. 343, 357 (1996)); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012). Further, the "Article III standing determination should precede that of class certification" as Rule 23 "cannot create standing." *Elkind v Revlon Consumer Prods. Co*rp., No. 14-CV-2482, 2015 WL 2344134 (E.D.N.Y. May 14, 2015). *See Mahon v Ticor Tit. Ins. Co.*, 683 F3d 59, 64 (2d Cir. 2012) ("we also disagree with the approach that analyzes class certification before Article III standing and treats the class as the relevant legal entity.")

### A.  PLAINTIFF CANNOT PURSUE A CLAIM BASED ON PRODUCTS HE DID NOT BUY

Plaintiff seeks to bring an action for twenty-five (25) Earthwhile products when he alleges vaguely that he only purchased "grooming wipes." (Compl. at ¶31).  But Plaintiff lacks Article III standing because it is well-settled that class plaintiffs lack standing to assert claims for products they did not purchase*. NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d  145, 158 (2d Cir. 2012) ( finding that the plaintiff "clearly lacked standing to assert claims on its behalf" for mortgage backed certificates it did not purchase); *DiMuro v. Clinque Laboratories*, LLC, 572 Fed. Appx. 27 (2d Cir. 2014) ("Plaintiffs lack class standing to bring claims for four products that they did not purchase …."); *Hart v. BHH, LLC*, No. 15 Civ. 4804, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016) ("The implicit lesson in *DiMuro* is that NECA

---

[11]  A Defendant may present a fact-based Rule 12(b)(1) motion and proffer evidence beyond the pleading.  *See Carter* at 57.

did not give plaintiffs - and their counsel - free reign to bring lawsuits regarding products they never purchased."); *Elkind v Revlon Consumer Prods. Co*rp., No. 14-CV-2482, 2015 WL 2344134 (E.D.N.Y. May 14, 2015) (plaintiffs lacked standing to pursue any claims arising from the sale of a products that they had not purchased: "it is black letter law that a rule of procedure (such as Rule 23) cannot create standing.").

In addition, here, Plaintiff alleges that he purchased some of the Products but does not actually plead which ones, leaving the court to guess which products were actually purchased.[12] That alone mandates dismissal of Plaintiff's claims. *See Holve v. McCormick & Company, Inc.*, 334 F. Supp. 3d 535, 548 (W.D.N.Y. 2018) ("There are no specific allegations regarding the purchase of the Other Products Plaintiff purchased -- leaving the Court to speculate *which* of the Other Products Plaintiff purchased. As a result, Plaintiff has failed to establish a causal connection between the Other Products and her injuries.").

### B. PLAINTIFF LACKS STANDING TO SUE FOR INJUNCTIVE RELIEF

Plaintiff seeks a "permanent injunction" prospectively prohibiting Earthwhile from labeling products as "All Natural" or "Totally Natural." (Complaint at ¶¶60-61). But Plaintiff lacks standing to bring a claim for prospective injunctive relief.

Standing requires that a plaintiff show an "actual or imminent" injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of future or continuing harm." *City of Los Angeles v. Lyons,* 103 S. Ct. 1660, 1670, 461 U.S. 95, 111 (1983); *Shain v. Ellison*, 356 F.3d 211, 215 (2d. Cir. 2004) (a plaintiff seeking injunctive relief "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he will be injured in the future.").

---

[12] Plaintiff alleges that he purchased "a number of products, including grooming wipes" but does not iterate which of the various grooming wipes among the Products he actually purchased. Compl. at ¶31.

Accordingly, "to establish standing to obtain prospective relief, a plaintiff 'must show a likelihood that he will be injured in the future.'" *Carver v. City of New York,* 621 F.3d 221, 228 (2d Cir. 2010) (internal citations omitted). And "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing present adverse effects." *Spiro v. Healthport Techs., LLC,* 73 F.Supp.3d 259, 269 – 72 (S.D.N.Y 2014) (internal quotations omitted). "When seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm." *Pungitore v. Barbera,* 506 F. App'x 40, 41 (2d Cir. 2012) (summary order) (emphasis in original) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983)). Failure to allege an intention to purchase more of the offending product is fatal to a claim for prospective injunctive relief. *See Davis v. Hain Celestial Grp., Inc.,* 297 F. Supp. 3d 327, 339 (E.D.N.Y. 2018) ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way. He therefore lacks standing to seek an injunction."); *Carver,* 621 F.3d at 228; *Buonasera v. The Honest Company, Inc.,* 208 F. Supp. 3d 555, 565 (S.D.N.Y. 2016) (Section 349 claim for injunctive relief dismissed for failure to "allege future injury."); *Reid v. GMC Skin Care USA Inc.,* 2016 WL 403497, 8:15-CV-277, (N.D.N.Y., Jan. 15, 2016) ("plaintiff who has not alleged that she will purchase the offending product in the future has not established the likelihood of future injury required by Supreme Court and Second Circuit precedent.").

Here, Plaintiff not only fails to specify which products he actually purchased but alleges only that he "would purchase the Products again if the ingredients were changed." Compl. at ¶46. This kind of allegation is insufficient to demonstrate "real or immediate threat of injury." *See Holve v. McCormick & Co., Inc.* 334 F. Supp. 3d 535, 552 (W.D.N.Y. 2018) (finding

allegation of future purchase insufficient when predicated on a change in the product); *Bernadino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570, 2017 WL 3727230, at \*6 (S.D.N.Y. Aug. 11, 2017); *Atik v. Welch Foods, Inc.*, No. 15-CV-5405, 2016 WL 5678474, at \*6 (E.D.N.Y. Sept. 30, 2016.); *Buonasera,* 208 F. Supp. 3d at 565 (S.D.N.Y. 2016) (allegation of intent to purchase if "products were reformulated" is "insufficient to allege future injury."); *see also, Albert v. Blue Diamond Growers,* 151 F. Supp. 3d 412, 418, n. 4 (S.D.N.Y. 2015) ("although Ackerman and other cases from the Eastern District of New York may suggest that future injury is not required in the consumer protection context, this Court declines to follow those cases because binding Supreme Court and Second Circuit precedent dictates otherwise."). Because Plaintiff alleges that he would only purchase the Products if they were changed, he has not alleged that he could be injured in the future by the Products as they exist, but has alleged he would, in fact, avoid future harm by not buying if they were unchanged, and thus, has no standing to seek injunctive relief. *See Holve*, *supra*. at 552.

Plaintiff should not be heard to argue that "magic words" alleging future continuing injury are not required, and that a public-policy exception applies to consumer protection cases, because binding precedent dictates otherwise. *See Atik v. Welch Foods, Inc.*, No. 15-CV-5405, 2016 WL 5678474, at \*6 (E.D.N.Y. Sept. 30, 2016) ("Plaintiffs rely on cases from this District and the Northern District of California to suggest that there is a public-policy exception to the requirement of a future continuing injury in consumer protection cases"). In *Atik,* the Court properly held that:

> the more recent trend of adhering to *Lyons* and *Shain* by refusing to recognize a public-policy exception to the requirement of a future continuing injury in consumer-protection cases has the better argument. Putting aside the arguments in favor of the exception, it has only been invoked by courts at the district level and is not binding on this Court. *Lyons* and *Shain* remain binding Supreme

> Court and Second Circuit precedent, and this Court is bound by these holdings. Accordingly, because the Complaint fails to establish a likelihood of future or continuing harm to Plaintiffs, the Court respectfully recommends that Plaintiffs' claim for injunctive relief be dismissed.

*Id*. at *6. *See also Colella v Atkins Nutritionals, Inc.,* 348 F. Supp. 3d 120 (E.D.N.Y. 2018) ("Plaintiff argues that there is an exception to the future harm requirement in consumer protection cases…However, plaintiff cites no binding precedent to that effect and recent cases contradict plaintiff's position."); *Davis v. Hain Celestial Group, Inc.*, 297 F.Supp.3d 327, 338 (E.D.N.Y. 2018) (stating cases providing an exception to the future harm requirement are "inconsistent with Article III and with Supreme Court and Second Circuit case law."). Accordingly, Plaintiff's claim for injunctive relief should be dismissed.

Indeed, because Plaintiff lacks individual standing, he lacks standing on behalf of any putative class. *See Holve supra*, ("Furthermore, without individual standing to pursue injunctive relief, Plaintiff may not represent the purported class with respect to injunctive relief.") (*citing Singleton v. Fifth Generation, Inc.* No. 5:15-CV-474, 2017 WL 5001444, at *16 (N.D.N.Y. Sept. 27, 2017)) ("Without standing, Plaintiff may not represent the proposed class for purposes of seeking injunctive relief.") (*citing Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)).

In addition, Plaintiff has no injury of which to complain because Earthwhile has itself provided him with an adequate remedy. The Product label clearly states that Plaintiff's is "Guaranteed Satisfaction:"

> We're sure you'll be satisfied too! If you are not completely satisfied with your retail purchase for any reason, we'll refund your money. Simply send the unused portion along with purchase receipt and a quick note telling us why (please), and we'll quickly send you a refund.

Because Plaintiff and the proposed class have an adequate remedy directly from Earthwhile, they

have not sustained injury and the claims should be dismissed. *See generally, Jovel v. Boiron, Inc.* No. 11-cv-10803, 2014 WL 1027874 (C.D. Cal. Feb. 27, 2014) ("money-back guarantee does provide an alternative remedy for many class members of the proposed class"); *In re Aqua Dots Products Liability Litig.,* 654 F.3d 748, 752 (7th Cir. 2011) ("plaintiffs want relief that duplicates a remedy … that remains available to *all* members of the putative class."). The money-back relief is available to all class members, including plaintiff, without limitation, thus the complaint should be dismissed.

### C.    PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF ARE MOOT

Plaintiff's claim for prospective injunctive relief is moot. Before this action was filed, Earthwhile changed its product labels to comply with the FTC guidelines for labeling announced in 2016 to eliminate, *inter alia*, the slogan "totally natural pet care." *See* Certification of Paul Armstrong (the "Armstrong Cert.") at ¶7. Further, even before that FTC guidance was issued, Earthwhile's labels were changed to remove the words "All Natural" beginning in 2015. *See id.* at ¶6. Thus, Earthwhile's Products no longer have labels that say "All Natural" or "totally natural pet care" and indeed, never said "Totally Natural." Because Earthwhile has already corrected its practices and changed its labels, Plaintiff's claim for injunctive relief are moot.[13] *See O'Neill v. Standard Homeopathic Company,* No. 16-CV-8687 (KMK) 2018 WL 4680997 (S.D.N.Y. Sept. 28, 2018) ("The voluntary cessation of allegedly illegal conduct usually will render a case moot. . . .") (*citing Lamar Adver. Of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004)).

## II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLAUSIBLY ALLEGE THE PRESENCE OF NON-NATURAL INGREDIENTS

---

[13] The current labels for the Products are attached as Ex. B to the Armstrong Cert.

Dismissal is proper where "the well pleaded facts do not permit the court to infer more than the possibility of misconduct." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 718 (2d Cir. 2013). A complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ascroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). The Supreme Court has held that a plaintiff must provide "more than a sheer possibility that a defendant has acted unlawfully" to survive dismissal that the pleading stage. *Id*. at 678. A plaintiff must "allege more by way of *factual content* to nudge his claim" of unlawful actions "across the line from conceivable to plausible." *Id.* at 683 (emphasis added). Plaintiff has not alleged sufficient "factual content" to show that it is more than merely "conceivable" that the Products do contain non-natural ingredients. Plaintiff alleges that the Products "contain multiple ingredients that are . . . synthetic." (Compl. at ¶7). But Plaintiff's allegations concerning the Products are based on nothing more than conclusion, speculation and inaccuracy.

First, Plaintiff alleges that the Products contain various "synthetic" ingredients. But Plaintiff does not allege how he has determined that these allegedly synthetic ingredients are present in the Products. Second, Plaintiff's allegations that various ingredients in the Products are synthetic is speculative as he fails to allege how sodium chloride, glycerin, Vitamins A, B, D, and E or citric acid – all naturally occurring – are synthetic. Last, Plaintiff's unfounded and inaccurate allegations pervade the Complaint.

Plaintiff alleges that common table salt is a "synthetic and hazardous chemical substance" when the authority cited in the Complaint states that it is "Practically Non-hazardous" and

doesn't address how it can be synthetic.[14]  Comp. at ¶7(h). Next, Plaintiff makes the conclusory statement that Glycerin, made by heating fat, "cannot be described as 'natural'" when the C.F.R. section cited in the Complaint, 7 C.F.R.  §205.605(b), plainly allows its use in human food "products labeled as 'organic' or 'made with organic'. . . ." Comp. at ¶7(i).  Plaintiff alleges that cetearyl alcohol is listed as a synthetic in 21 C.F.R. §172.515 but that section, which lists "synthetic flavoring substances and adjuvants" that "may be safely used in food" does not include cetearyl alcohol.  Plaintiff alleges 40 C.F.R. §180.910 deems tocophyeryl acetate (vitamin E) as synthetic when that section does not designate it as synthetic but merely allows its use as an "inert (or occasionally active) ingredients in pesticide formulations…"  Comp. at ¶7(b).

Similarly, Plaintiff alleges that polysorbate 20 is "synthetic" and cites 21 C.F.R. §178.3400 when that section simply states that the "substances listed . . . may be safely used" in food.  Comp. at ¶7(a).  Plaintiff alleges that lauryl glucoside is synthetic when the authority cited in the Complaint simply states that it is "sugar and lipid based" and does not say it is synthetic. Comp. at ¶7(e).  Plaintiff alleges that citric acid is synthetic when the very authorities upon which he purports to rely in the Complaint states that citric acid produced by fermentation is "Nonsynthetic," and affirms that extracted substances which have "not been altered into a form that does not occur in nature" or are "created by naturally occurring biological processes" are considered Nonsynthetic.  *See* Comp. at Ex. A, *NOP 5033-1 Decision Tree for Classification Syn/NS;* 7 U.S.C. §6502(21).[15]

At bottom, Plaintiff's allegations that the Products contain non-natural ingredient are conclusory, speculative and without factual basis.  Indeed, Plaintiff's allegations implicate

---

[14] https://whatsinproducts.com/files/brands_pdf/1391295214.

[15] Plaintiff cites 7 U.S.C. §6502(21) for the purported definition of "synthetic" but neglects to note that that provision applies to the production of organic food for human consumption and, worse, omits the operative language which excludes materials created by processes like fermentation and heating from the definition of synthetic.

ingredients that both occur in nature and are produced with identical characteristics without alleging that he has determined that the ingredients complained of do not occur in nature or had undergone a chemical change not created by fermentation or by heating. *See id*.

Under the *Iqbal/Twombly* pleading standard, Plaintiff must provide "more than a sheer possibility" that the Products contain non-natural ingredients. *See Iqbal*, 556 U.S. 678; *Twombly,* 550 U.S. at 557 (stating that "possibility" is not "plausibility"). Plaintiff fails to provide any "factual content" that is neither speculative or inaccurate to support his claims and therefore his Complaint should be dismissed. *See In re KIND LLC "Healthy & All Natural" Litig.,* 209 F. Supp. 3d 689, 698 (S.D.N.Y. 2016) (Plaintiffs' allegations that "approximately 90% of the canola, 89% of corn, and 94% of soybeans grown in the United States are genetically modified" are insufficient"), (*citing In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.,* 167 F.Supp.3d 524, 535 (S.D.N.Y. 2016) ("[A] claim based only on probabilistic evidence of injury, devoid of any factual allegations particular to the plaintiff and without a basis to plausibly infer that all covered products were implicated, does not adequately plead injury-in-fact.")).

## III. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER N.Y. GEN. BUS. LAW

Plaintiff brings claims under N.Y. Gen. Bus. Law §§349 and 350. To assert a claim under these sections, a plaintiff must allege: (i) the challenged act or practice was consumer oriented; (ii) that it was misleading in a material way; and (iii) that the plaintiff suffered injury as a result of the deceptive act. *Merck Eprova AG v. Brookstone Pharm., Inc*., 920 F.Supp.2d 404, 425 (S.D.N.Y. 2013) (citations omitted). In particular, N.Y. Gen. Bus. Law **§**350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." A claim for false advertising has four elements: (i) the advertisement was consumer-oriented, (ii) the advertisement was materially misleading, (iii) the plaintiff relied on

the advertising, and (iv) the plaintiff was injured as a result of the advertisement. *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, No. 16-CV-03638, 2017 WL 627461 (S.D.N.Y. Feb. 15, 2017).

Sections 349 and 350 comprise "mini" Federal Trade Commission ("FTC") Act, having been modeled on that analogous federal statute. *See People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 120 (2008). Indeed, §349 was enacted "to follow in the steps of the [FTC] with respect to the interpretation of deceptive acts and practices. . . ." *State by Lefkowitz v. Colo. State Christian Coll. of Church of Inner Power, Inc.,* 346 N.Y.S.2d 482, 487 (N.Y. Sup. Ct. 1973) ("Section 350 of the General Business Law simply declares false advertising to be unlawful. It appears that the State Legislature intended to adopt requirements identical to those established by the Federal Trade Commission and to apply them to intrastate transactions in New York.") (*quoting, In Metropolitan Retail Assn. v. City of New York*, 60 Misc.2d 805, at 807, 303 N.Y.S.2d 612, 614, (Sup.Ct., N.Y. Co., 1969)); *see also* N.Y. Gen. Bus. Law §349(d) (exempting, from state enforcement, practices that comply with, *inter alia*, FTC rules, regulations, and interpretations). The same is true for §350's false advertising prohibition. *See In Metropolitan Retail.,* 303 N.Y.S.2d at 614, ("State legislature intended to adopt requirements [under § 350] identical to those established by the [FTC]."). *See Braynina v. TJX Companies, Inc.,* 15 CIV. 5897 (KPF), 2016 WL 5374134, at *6 (S.D.N.Y. Sept. 26, 2016).

Accordingly, "in interpreting the phrase 'deceptive practices' [under §349], the New York courts have in large measure relied on the [FTC] Act's definition of such practices." *Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984); *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, No. 96 Civ. 5150 (JFK), 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997) ("Because [§] 349 is modelled after the [FTC] Act, federal courts have interpreted [§349's]

scope as limited to the types of offenses to the public interest that would trigger [FTC] intervention under [the FTC Act] [.]"). *Braynina* at *6. "Indeed, under the New York General Business Law ("GBL"), it is a complete defense to the Plaintiff's claims that the challenged conduct complies with the applicable rules and regulations promulgated by federal agencies. *See* GBL §§ 349(d), 350-d." *Scholder v. Riviana Foods Inc.,* 16-CV-6002, 2017 WL 2773586, at *1 (E.D.N.Y. June 23, 2017).

In July of 2016, the FTC addressed the issue of labeling of products being "All Natural" and "100% Natural." *See https://www.ftc.gov/news-events/blogs/buisness-blog/2016/04/are-your-natural-claims-all-accurate*. In that release, the commission announced consent orders resolving cases where products labeled as "All Natural" contained artificial ingredients stating that "[i]f you advertise your product as 'all natural' or '100% natural' and it contains artificial ingredients or chemicals, now is the natural time for compliance check." *Id*. The agency further responded to public comment on those consent orders which raised the question of whether products labeled "natural" had the same restrictions. The FTC responded:

> We do not have evidence that consumers necessarily interpret "natural" to mean "all natural" or no synthetic ingredients. Absent such evidence, we do not feel it would be appropriate in this case for us to presume that consumers have that understanding of the term "natural."

*See*, July 6, 2016 Letter to Mia Hardwick from Secretary Clark at

https://www.ftc.gov/system/files/documents/cases/1607ltrstocommenters.pdf. For its part, the

Food and Drug Administration has asked the public to comment on the use of the term "natural"

on food labels and has yet to report.[16]  Here, the Products do not claim to be "All Natural" or "Totally Natural" as Plaintiff alleges and the labels meet the FTC standard.

## A. PLAINTIFF FAILS TO STATE A CLAIM BECAUSE THE REASONABLE CONSUMER WOULD NOT HAVE BEEN MISLED

The New York Court of Appeals has established an objective standard for determining whether an act is materially deceptive or misleading "to a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 25 (1995).  A court may make this determination as a matter of law.  *Id.; Fink v. Time Warner Cable,* 714 F.3d 739, 741 (2d Cir. 2013), *aff'g* 837 F.Supp.2d 279 (S.D.N.Y. 2011).  Materiality is an objective inquiry; a plaintiff must show that the act complained of was likely to "mislead a *reasonable consumer* acting reasonably under the circumstances." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (emphasis added) (citation omitted).  Courts "view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Delgado v. Ocwen Loan Servicing, LLC*, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014) (citation and quotation marks omitted). "In determining whether a reasonable consumer would be misled by a particular advertisement, context is crucial." *Fink v. Time Warner Cable,* 714 F.3d 739, 742 (2d Cir. 2013); *see also Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 26, 53 (E.D.N.Y. 2015) ("Courts 'view each allegedly misleading statement in light of its context on the product label or advertisement as a whole…. The entire mosaic is viewed rather than each tile separately.'")  Here, the contents of the Products labels - viewed in their entirety - demonstrate that no reasonable consumer would be deceived.

---

[16]

https://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/labeling
nutrition/ucm456090.htm

*First*, it is well-settled that statements that are mere puffery are not actionable. Puffery includes generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he/she could rely. *Zaccagnino v Nissan N. Am., Inc.,* 14 CIV. 3690 LLS, 2015 WL 3929620, at *3–4 (S.D.N.Y., June 17, 2015). Regarding puffery, the Second Circuit has stated that "[s]ubjective claims about products, which cannot be proven either true or false, are not actionable." *Fink v. Time Warner Cable,* 810 F.Supp.2d 633, 644 (S.D.N.Y. 2011) (citations omitted) (*quoting Lipton v. Nature Co.,* 71 F.3d 464, 474 (2d Cir. 1995)). Puffery "is not actionable under section 349." *Verizon Directories Corp. v. Yellow Book USA, Inc.,* 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004); *see also In re Scotts EZ Seed Litig.,* No. 12-CV-4727, 2013 WL 2303727 (S.D.N.Y. May 22, 2013) ("plaintiffs' Section 349 and 350 claims based on non-actionable puffery are dismissed as to all defendants.").

Here, when the labels are viewed in their entirety, it is manifest that the words "totally natural pet care" are not a factual statement related to the characteristics of the any particular product, but a generalized slogan reflecting a subjective claim about overall superiority.[17] *See Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *13 (*citing Time Warner Cable*, 497 F.3d at 160) ("vague statements of a product's superiority are non-actionable puffery"); *see also Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381, 392 (E.D.N.Y. 2013) (positing that puffery turns on such factors as the "vagueness," "subjectivity," and "inability to influence ... buyers' expectations."); *Stokely-Van Camp, Inc. v. Coca-Cola Co.,* 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009) ("the Court of Appeals for the Second Circuit has recognized that advertising terms like "complete" are puffery because they are subjective and cannot be proven true or false.") (*citing*

---

[17] The complete labels for all the Products featured in the Complaint – which only showed a part of the labels -- are attached as Ex. A to the Armstrong Cert.

*Lipton v. Nature Co.,* 71 F.3d 464, 474 (2d Cir.1995) (use of "thoroughly" in statement "thoroughly researched dozens and dozens of animals" is puffing)).

*Second*, Plaintiff offers an objectively unreasonable definition of what "All Natural" means.[18]  First, Plaintiff's allegations that the Products are misleadingly labeled because the Products contain "synthetic ingredients" relying, in the main, on definitions of "synthetic" found in organic food regulations, fail.  *See* Compl. at ¶7; *Pelayo v. Nestle USA, Inc*., 989 F. Supp. 2d 973, 978-80, (C.D. Cal. 2013) ("Plaintiff alleges that none of the ingredients in a "natural" product are "synthetic" as that term is defined by the National Organic Program ("NOP"), which regulates products labeled as "organic." However, because Buitoni Pastas are not labeled as "organic," the definition of "synthetic" under the NOP does not apply. In addition, the Challenged Ingredients that Plaintiff claims are "synthetic" under the NOP are expressly permitted in products labeled "organic." *See* 7 C.F.R. § 205.605(b) (identifying synthetic substances allowed in products labeled as 'organic')"). Second, Plaintiff's definition is unreasonable as every consumer knows that the grooming wipes which Plaintiff allegedly purchased are not natural as the wipes are obviously made from a paper product not found in nature.  And it is also obvious that the other Products, like shampoo, are not natural substances and that all of the ingredients that make up a foaming, cleansing, itch soothing, shampoo are necessarily manufactured.  *See, Pelayo*, 989 F. Supp. 2d at 978-80 ("the reasonable consumer is aware that Buitoni Pastas are not 'springing fully-formed from Ravioli trees and Tortellini bushes . . .  the Court concludes that the use of the term "All Natural" on the Buitoni Pastas packaging is not deceptive as a matter of law.'").  No reasonable consumer would believe that wipes and shampoo exist naturally in nature or emerge fully formed from the union of non-

---

[18] Plaintiff should not be heard to argue that "natural" has the same meaning as "all natural" when the FTC has noted that there is no basis for that conclusion. *See* https://www.ftc.gov/system/files/documents/cases/1607ltrstocommenters.pdf

processed materials. Thus, as a matter of law, a reasonable consumer would not be deceived. *See Red v. Kraft Foods, Inc.*, No. 10-CV-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (dismissing a claim regarding a "Vegetable Thins" product's claim to be "made with real vegetables," reasoning that "[t]he fact remains that the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables").

## IV. PLAINTIFF'S BREACH OF WARRANTY CLAIMS SHOULD BE DISMISSED

First, Plaintiff's Magnuson-Moss Warranty Act (the "MMWA") claim fails. The MMWA defines a written warranty as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

15 U.S.C. 2301(6)(A). "Courts have found promises are written warranties under the MMWA only if the promise clearly states the specific time period over which the promised performance is to occur." *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *4, (S.D.N.Y. May 22, 2013). Here, the slogan "totally natural pet care" is not such a promise and is thus, not actionable under the MMWA. Moreover, an "'All Natural' label does not warrant a product free from defect" and thus Plaintiff's MMWA claim fails. *See In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1102 (C.D. Cal. 2012) ("The statement that Wesson Oil is "100% Natural" is not an assertion that the product is defect free or that it will meet a specific level of performance over a specified period of time. Nor is it a promise to take any remedial action. Courts have declined to extend the term "written warranty" beyond its statutory definition.").

Next, Plaintiff's breach of an express warranty fails for failure to plead pre-suit notice of breach. *See Petrosino v. Stearn's Products, Inc.*, 16-CV-7735 (NSR), 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018) ("Plaintiff must provide factual allegations, as opposed to conclusory statements, supporting the contention she notified Defendant of the alleged breach within a reasonable time after discovering them."). Here, Plaintiff makes no allegations of any pre-suit notice. Thus, this claim should be dismissed.

Last, Plaintiff's breach of implied warranty of merchantability fails for two independent reasons. First, the claim should be dismissed because Plaintiff fails to allege privity with Earthwhile. *See Tomasino v. Estee Lauder Companies Inc.*, 44 F. Supp. 3d 251, 262 (E.D.N.Y. 2014) ("Absent privity of contract, [however,] a purchaser cannot recover mere economic loss against a manufacturer under a theory of breach of implied warranty."); *Aracena v. BMW of N. Am., LLC*, 71 N.Y.S.3d 614 (2d Dep't. 2018) ("No implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged."). Second, Plaintiff's failure to plead pre-suit notice also mandates dismissal. *See Bellevue S. Assoc. v HRH Const. Corp.*, 78 NY2d 282, 298 (1991) ("Defenses available to claims of breach of the implied warranty of merchantability include the buyer's contributory conduct, lack of privity, failure to give notice, and the Statute of Limitations."). Here, Plaintiff has neither alleged privity with Earthwhile or that he gave pre-suit notice to the company. Thus, his breach of implied warranty of merchantability claim should be dismissed.

## V. PLAINTIFF'S CLAIM FOR VIOLATION OF STATE CONSUMER PROTECTION STATUTES SHOULD BE DISMISSED FOR FAILURE TO PLEAD WITH THE REQUISITE PARTICULARITY

Plaintiff alleges violation of the consumer protection statues of some 42 states by making the naked assertion that "Defendant violated the aforementioned states' unfair and deceptive acts

and practices laws by representing that the Products are 'Totally Natural' and/or 'All Natural.'" Compl. at ¶73. But Plaintiff's claims of breach of the consumer fraud statutes of these 42 states should be dismissed for failure to plead with the specificity required by F.R.C.P. 9(b).[19] *See Garcia v Chrysler Group LLC,* 127 F. Supp. 3d 212, 233 (S.D.N.Y. 2015) ("Courts have applied Rule 9(b) to claims under almost all of the state consumer protection statutes at issue in this action.") (*citing cases*).

In general, Rule 9(b) requires that a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *DiMuro v. Estee Lauder Companies, Inc.,* No. 3:12-CV-01789, 2013 WL 12080901 at *3 (D. Conn. November 19, 2013) (allegations that included the identity of each product purchased by the plaintiffs, why the products were purchased, where the products were purchased, and the date of the purchases did not satisfy the requirements of Rule 9(b)), *aff'd DiMuro v. Clinique Laboratories, LLC*, 572 Fed. Appx. 27, 30 (2d Cir. 2014). Here, Plaintiff does not allege which specific products he purchased, when he made such purchases, what he paid, or where specifically his purchases were made. Moreover, there are no allegations that any specific purchases were made in any of the states outside New York by any particular class member. Indeed, the Complaint does not allege the proposed period during which the purchases were made. Thus, the Complaint does not even

---

[19] GBL §349 and §350 do not require pleading to comply with F.R.C.P. 9(b), but the consumer protection statutes of other states require more. *See*, e.g., *Goldemberg v Johnson & Johnson Consumer Companies, Inc.,* 8 F. Supp. 3d 467, 481 (S.D.N.Y. 2014) ("However, *Lieberson* dealt with the New Jersey Consumer Fraud Act, under which plaintiffs must satisfy the heightened pleading standard of Rule 9(b), *id.* at 538–42, whereas no such heightened standard applies to GBL § 349 claims.") (*citing Pelman ex rel. Pelman v. McDonald's Corp*., 396 F.3d 508, 511 (2d Cir. 2005)); *Daniel v Mondelez Intl., Inc.,* 287 F. Supp. 3d 177, 186 (E.D.N.Y. 2018) "[c]laims under GBL sections 349 and 350 are not subject to the pleading-with-particularity requirements of Rule 9(b)"). While the Complaint might be specific enough to satisfy the New York standard, it certainly fails to meet the heightened standard of Rule 9(b).

allege the who, what, where and when of any purchases by Plaintiff, let alone the specificity required by Rule 9(b) for purchases made outside New York.

In addition, the various state statutes have specific requirements that are not pleaded in the Complaint. For example, Plaintiff alleges that the New Jersey Consumer Fraud Act ("NJCFA") was violated but fails to plead the requirements of that statute to show an "ascertainable loss." Here, the Complaint simply alleges that "Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be "Totally Natural" and/or "All Natural."" Compl. at ¶3. But this mere pleading of a "premium" does not satisfy the NJCFA. *See Hemy v. Perdue Farms, Inc.,* Civil Action No. 11–888 (FLW), 2011 WL 6002463 (D.N.J. Nov. 30, 2011) ("As I explained in my recent decision in *Lieberson*, 'the court finds that absent any specific information concerning the price of the products or the price of any comparable products, Plaintiff's allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements insufficient to withstand a motion to dismiss.' That was not done here. There are no facts supporting a claim of ascertainable loss – other than the use of the term 'premium price.'") (*quoting Lieberson v. Johnson & Johnson Consumer Companies, Inc*., 865 F. Supp. 2d 529, 541-42 (D.N.J. 2011)).

For another example, the Ohio and Massachusetts statutes require pleading of pre-suit notice, which is absent here. *See In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices and Products Liab. Litig.,* 288 F. Supp. 3d 1087 (D.N.M. 2017) ("For a class-action plaintiff to state a claim under the OCSPA, the plaintiff must allege pre-litigation notice") *citing Marrone v. Philip Morris USA, Inc.,* 110 Ohio St.3d 5, 850 N.E.2d 31, 33 (2006); *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 19 (1st Cir.2004) ("The statutory notice requirement [of 93A] is not merely a procedural nicety, but, rather, a prerequisite to suit." (*quoting Entrialgo v. Twin City*

*Dodge, Inc.*, 368 Mass. 812, 333 N.E.2d 202, 204 (1975) ("as a special element of the cause of action, it must be alleged in the plaintiff's complaint. Last, the Kentucky Consumer Protection Act requires privity. *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.,* 836 S.W.2d 907, 909 (Ky.Ct.App. 1992) (Under §367.170, a consumer "may not maintain a private action against a seller with whom he did not deal or who made no warranty for the benefit of the subsequent purchaser," because the statutory language "plainly contemplates an action by a purchaser against his immediate seller." ).

In sum, Plaintiff has not met the pleading standards for the NJCFA, MRSA §213, the OSCPA, 93A or §367.170, nor has he alleged how each of the specific elements of the other 36 state statutes were violated and accordingly this blunderbuss claim should be dismissed. *See In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 254 (D. Conn. 2015) (recognizing the infirmity of broad, non-specific pleading of violation of state consumer protection statutes).

## VI. THE COMPLAINT SHOULD BE DISMISSED OR STAYED UNDER THE PRIMARY JURISDICTION DOCTRINE

Plaintiff's claims are based on the allegation that Earthwhile labeled the Products as "All Natural" and "Totally Natural" when, in Plaintiff's view, the Products contain materials not found in nature. (Compl. at ¶7). Under the primary jurisdiction doctrine, the Court should dismiss or stay this case so that the FTC can utilize its special knowledge to make the determination whether the ingredients contained in the Products are not natural.

Primary jurisdiction is a judicially created doctrine that requires a trial court to dismiss or stay a case where an administrative agency is tasked with addressing an issue that is raised in a litigation. *Belfiore v. P&G*, 311 F.R.D. 29, 73 (E.D.N.Y. Oct. 5, 2015); *Ault v. JM Smucker Co.,* 2014 WL 1998235 at *6 (S.D.N.Y. May 15, 2014). The doctrine ensures "uniformity and consistency in the regulation of business entrusted to a particular agency." *Goya Foods Inc. v.*

*Tropicana Products Inc.*, 846 F.2d 848, 851 (2d Cir. 1988) (quoting *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303-04 (1976)).  In addition, the doctrine is based on the recognition by courts that, "with respect to certain matters, 'the expert and specialized knowledge of the agencies' should be ascertained before judicial consideration of the legal claim."  *Id.* (internal citations omitted).

When exercising its discretion, the court must consider: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made[.]"  *Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 295 (2d Cir. 2006).  Here, each of these factors weighs in favor of application of this doctrine.

*First*, the issue of whether and to what extent companies, like Earthwhile, may make "natural" claims in connection with their products is a policy-driven issue that is within the specific competence of the FTC.  Indeed, courts have recognized that the FTC has specialized knowledge and expertise regarding product advertising.  *Belfiore* 311 F.R.D. at 76 ("The FTC is 'the federal agency primarily concerned with the regulation of advertising.'") "Historically, the FTC has been the leader in articulating the legal theories behind the law of deceptive and unfair trade practices, as well as in the development of new and more effective remedies." Dee Pridgen & Richard M. Alderman, *Consumer Protection and the Law*, § 1:5, Westlaw (Nov.2014)).

*Second*, in establishing the FTC, Congress specifically tasked the FTC with addressing deceptive labeling. The Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 41 et seq., is "the primary federal law governing the general field of consumer protection and is a source of

guidance for most state laws." *Belfiore* 311 F.R.D. at 76 .

Determining whether the term "All Natural" is deceptive to a reasonable consumer is directly within the FTC's discretion, as already evidenced by its investigation with different sellers of "All Natural" products. *See* https://www.ftc.gov/news-events/blogs/buisness-blog/2016/04/are-your-natural-claims-all-accurate. Moreover, NYGBL §349 expressly provides that it "shall be a complete defense" under the statute if the challenged act or practice "complies with the rules and regulations of, and the statutes administered by the federal trade commission …" NYGBL 349(d). Thus, a determination by the FTC concerning Earthwhile's alleged "All Natural" claims would be relevant here and could be conclusive. Indeed, Plaintiff admits that "in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance." Compl. at ¶8.

*Third*, in accordance with its statutory directive, the FTC has promulgated a comprehensive regulatory scheme governing product advertising and the FTC has implemented numerous policies and guidance documents governing the advertisement of products. The consistent administration of this complex federal regulatory scheme will be extremely difficult if private plaintiffs are able to redefine standards for advertising of products on a state-by-state basis. In recent years, hundreds of all natural cases involving food products governed by the Food and Drug Administration (the "FDA") have been filed across the country. And numerous courts have either dismissed or stayed cases, recognizing, absent deference to the FDA, there exists a substantial probability of inconsistent rulings. *See Scholder v. Riviana Foods Inc.,* 16-cv-6002, 2017 WL 2773586 at *3, (E.D.N.Y. June 23, 2017) ("Thus, several courts confronted with similar issues have invoked the doctrine of primary jurisdiction to stay federal court cases arising from allegedly false or misleading claims on food packaging, pending the outcome of the

FDA's most recent rulemaking process.") (*citing cases*). This same reasoning applies here with regard to the FTC and non-food labeling. *See, e.g, Belfiore v. P&G*, 311 F.R.D. 29, 73 (E.D.N.Y. Oct. 5, 2015).

In *Belfiore,* the district court stayed a litigation under the doctrine of primary jurisdiction because the FTC was better able to protect consumers. 311 F.R.D. at 38. In connection with a number of class action lawsuits, consumers sued the Proctor & Gamble Company ("P&G"), alleging that they paid a premium for "flushable wipes" in place of toilet paper that is not "flushable." The FTC had also filed a complaint against another manufacturer of "flushable" wipes, declaring that the manufacturer's advertising was deceptive. The FTC released a proposed agreement and consent order with the manufacturer and solicited comment. P&G then invoked the primary jurisdiction doctrine to stay the case, arguing that the case was properly before the FTC. After setting forth and applying the aforementioned four (4) factors that a court should consider when deciding the issue of primary jurisdiction, the district court stayed the case "to permit the FTC to determine a uniform definition of "flushable" and related matters. *Id*. at 79. *Fourth*, as noted above, the FTC has already intervened in the "All Natural" debate by: (i) launching an inquiry into various other sellers' use of the term "All Natural"; (ii) entering into consent orders with these others sellers; and (iii) inviting and considering public and industry comments with regard to the use of the term "All Natural" on products.

In sum, the applicable factors weigh in favor of deference to the FTC with respect to whether a particular product can be labeled "totally natural." The Court should dismiss or stay this case under the primary jurisdiction doctrine.

## **CONCLUSION**

Based on the foregoing, Earthwhile respectfully requests that this Court grant its motion to dismiss Plaintiff's Complaint in this matter.

Dated: February 19, 2019

Respectfully submitted,

BACKES & HILL LLP
200 Park Ave.
Suite 1700
New York, NY  10174

By:___/s/ Seth J. Lapidow, Esq.